on behalf of the defendant appellant, Mr. Hernandez-Sanchez. You set up fast and you talk fast, okay. I will try to speak a little slower. Your Honors, Mr. Hernandez-Sanchez was deprived of judicial review of his claim for 212C relief for three reasons. First, the merits of his claim were never considered, either by the immigration judge nor by the Board of Immigration Appeals, because they all found that he was pre-dermitted from 212C relief because of the aggravated felony conviction and the laws that they thought were retroactive at that time, and the Anti-Terrorism Effective Death Penalty Act and the immigration, the IIRIRA, which had been passed at that time. Second, the immigration judge and the Board of Immigration Appeals must have the opportunity to review, to use their discretion. And we learned that in the Ocardi case and in INS v. St. Cyr, which cited that case with approval. And finally, the government's argument would render 1326 unconstitutional, as they conceded that there was a due process error at the immigration judge level. Let me cut to the chase, or at least cut to the chase for me. Yes, sir. Why is – why did he have a plausible case for 212C relief? That's the standard he has to meet if we get to that question. Yes, Your Honor. Basically, Mr. Hernandez-Sanchez had many equities in his favor. The government argued at the district court that he would have had to meet the unusual and outstanding equity level, and the district court agreed with that. However, I don't believe that that is the appropriate standard. I believe that his criminal history is more akin to that of Mr. Ubaldo Figueroa than that of Mr. Gonzalez-Valario. Mr. Gonzalez-Valario had a six-year sentence imposed on him for a lewd and lascivious for a child under 14, and soon after his release from that case, had a first-degree burglary – or no, I'm sorry, a corporal injury case. Corporal injury to spouse case. Yes. And this one is a corporal injury to spouse case.  Yes. But there's no lewd or lascivious conduct with the minor. Correct. The most serious case beyond the domestic violence case that he has is the second-degree burglary, which really appears to be a glorified shoplifting case from what the pre-sentence report notes. And one thing to note is in the corporal injury case, even though it sounds extremely serious from what the pre-sentence report indicated, he did get the low end of the 234 term, which in California is what he was looking at. He got the low end of two years. What did he do to his spouse? In the pre-sentence report, it notes that he held – it was something to do with they were outside and arguing. He held some – either held her near or held some embers, hot embers of the barbecue near her. And apparently the test – the statements were that he was holding them, but then there were no burns on his hands. So there was some conflicting evidence as to that. But he did enter a guilty plea as to the domestic violence. What injury did he inflict upon the spouse? There – I believe that there were some burns, but it doesn't – I don't know the specifics. There weren't any specifics listed in the pre-sentence report or in the reports that I had. So he went to prison for nothing. I mean, you're trying to spin this thing down to nothing. No. He went to prison for corporal injury on his spouse. Correct. He burned his wife. Yes, Your Honor. I'm saying that that's – the pre-sentence report indicates that there were burns, but I don't know how severe it was. There's no – Enough to get him in prison. Correct. And there's no indication that – about the extent of it. It's just that it seems from looking that he could have gotten two, three, or four years, he got the low end of two years. So looking at everything as a whole, it may not have been as – And it wasn't a shoplifting. It wasn't a shoplifting. It was a burglary. It was a second-degree burglary. It was a burglary. Correct, Your Honor. But it was a second-degree burglary, which in California law is very broad. And in his case, it was – people were loading tiles from a building into the back of his truck, and he was present at that time. And that was what he was convicted of. But regardless of that, whether you feel that it should be the unusual and outstanding or not, I still think that he made a – he has a plausible claim due to the number of years that he resided in the United States, his children, and the support that he gave to them, both financially and otherwise, and his significant employment throughout California. And I'm not going to go into sort of the details of this. He comes to this country at age 22? Correct. And how long is he in the country at the time he is convicted and should have been able to make his 212C motion? He had been in the United States for at least 12 years. And – but in the pre-sentence report, which appears to have not – was not objected to by the government, he states that he had been in and out of the country from age 15. But he was not seriously in the United States for a long term until he was 22. And how old were his daughters at the time when he should have been able to make his 212C? I believe that his youngest daughter was – I believe it's 7, 9, and approximately 14 are the ages. I could be off on that. But I know that the oldest daughter was about 13 or 14 years old. And we have two letters in the record from the eldest daughter, Francesca, whose name is anglicized later. Yes. And is that first letter, the handwritten letter, that was submitted at the time of sentencing in the first proceeding? That was submitted to the immigration judge, actually, as she was asking that he be able to stay in the United States. The second – and that was submitted, again, at sentencing as well. And then the declaration was submitted as part of the argument as to prejudice for the 212C relief claim in this case. And I just want to be sure. I think I know the answer to this. Okay. I see nothing in the record on the question of ties and so on from the estranged spouse. There isn't anything in the record, no. The only indication from his wife is in the presentence report itself, where she indicates that at the time before they became estranged, he – which was as a result, obviously, of the corporal injury incident. But before that time, he had given them financial support, and he was continuing to see the daughters even after they were estranged at that time. That's the only information that we have. But we have nothing from the estranged spouse after the corporal injury where she says, you know, I'm making this now up. You know, he's really a good man. This is unfortunate. I wish he were here. We have nothing of that sort. No. You know, the only statements are, like I said, in the presentence report, she says that at the time he was – the probation officer did contact her when she was preparing this presentence report, or he was, Mr. Blair Gregory, and she did state that at the time, he was a good father in providing and seeing them as often as he could. But she couldn't give any specifics. She didn't really recall, because he hadn't been in the country for a couple of years at that point. But no, there's nothing specifically from her in the record. That's correct. But I still think that he did make a – he does make a valid claim, given that he had more than 10 years of employment in the agricultural industry, and he had other family members rather than just his children. He had his brother and three sisters who all resided in the United States and had either – were either lawful residents or United States citizens at that time. And then along with his three sisters as well. Now, it says plausible case. Remind me, plausible case as to what? Plausible that he would have received relief. Right. I understand that. I'm sorry. I was not clear in my question. And to receive relief under 212C, what sort of hardship does he have to show? Does it count hardship toward a brother? It's hardship as to the individual who's being deported and hardship as to their family that they're leaving behind. So if he would have, for instance, been supporting his brother or family members, then that would have been a factor, but he was not. They look at – Do we get to count the presence of the brothers and sisters in any way? For example, well, it's hard for him to be separated from his siblings. Does that – is that a permissible element in the calculus under 212C? In the Edwards case, I believe that one of the factors is simply – is just family ties in the United States. And so I think that that's the only way that it's – The general idea of family ties. Correct. I think that's the only way that it's looked at in this case. What were the family ties here with his siblings? He was residing with a brother up until his arrest in the 1995 case. He had been residing with them when he – or, I'm sorry, after the 1995 case, he resided with him since he was estranged from his wife. And he had some contact with his sisters, but mostly his closest tie was with his brother, who was one of the people who submitted a declaration, which I believe is at 171H in the excerpt of record. But he was his closest sibling who was residing with him. He lived with his brother. I forget now the name of the town. It was Fresno or some town in the valley. Yes. Yes. It was in the valley, in the Bakersfield and Fresno area. Yes. I see I'm running out of time, but as to the sentencing issue, I do believe this is a case that needs to be remanded for a full sentencing hearing rather than just the question in this case, because there were objections made to the increases in the sentence and at the time of sentencing and to the constitutionality of the guidelines as well. And that's the difference between this case and Ameline and Mr. Ameline's case. There was not – that issue was not preserved. However, Mr. Hernandez-Sanchez did preserve that error. So I believe that a remand is necessary. Why don't we hear from the government and then we'll give you a chance to respond. Thank you very much. Good morning. May it please the Court, my name is Christopher Alexander. I'm here representing the United States. As indicated by the Court, the first main issue is whether or not the deportation challenge should have been successful in the district court. One of the questions that the Court had was regarding what actually took place for the corporal injury to the spouse. As indicated in the pre-sentence report at page 6, what had occurred is that the wife was treated for first and second degree burns to her facial area. And this was in connection to a domestic incident that took place in 1995, in which the wife actually yelled for her eight-year-old daughter to call the police. And the defendant ripped the phone off of the wall. This is the type of crime of violence that the defendant committed in order to get himself removed from the United States. And this is information that the immigration judge had at the time that he ruled that  In addition to that, this person had also been convicted of two other crimes of moral turpitude, those from 1994, being petty theft and second degree burglary. Now, the Court also inquired as to the length of time for the defendant being in the United States. Well, he was in the United States starting at the age of 22, as indicated by the defendant, but also he had been in and out of the country previously. However, his first conviction took place at the age of 30. So during that time period, he had maybe about eight years in which he hadn't actually been convicted of a crime. After his first conviction at about the age of 30, he continued to have criminal contacts until, you know, finally his most recent conviction for violation of 1326. Now, at the time, the other thing to consider is that he was given the opportunity to be out of the country, but still nevertheless came back. But as far as whether or not the immigration judge had an opportunity to consider the merits of the case, the immigration judge had this information concerning the prior convictions before him. Now, the immigration judge ruled that this person should be excluded and perhaps and actually did not advise him of any 212C relief that was available to him. Now, what did the defendant do? The defendant went ahead and appealed to the immigration, Board of Immigration Appeals. He filed a notice to appeal, and that's actually contained within the record at 99. The notice of appeal defines specific instances that he's appealing. But in addition to that, he goes through and provides very lengthy, detailed discussion as to why he would be suffering prejudice as a result of being removed from the United States. All that was before the Board of Immigration Appeal. But what does that matter if they all thought they shouldn't consider it at the time? Well, they did. That's just it. But they didn't consider it under 212C. They had the opportunity to consider whether or not he should be removed from the United States, and they considered his arguments as to the prejudice he would suffer as a result of being removed from the United States. He put it before the Board of Immigration Appeal. Now, the Board of Immigration Appeal stated that at the first line of their decision, we find respondents' arguments are without merit. That's the first statement by the Board of Immigration Appeals. I don't know. I guess I'm confused. Under what standard would they have determined that he should not be removed? What would they be applying at that point? Since they thought they couldn't go on 212C, what would they be doing? Your Honor, it's not clear that they didn't consider the 212C aspect. In fact, the factors that would be considered under 212C were put before the Board of Immigration Appeals. I guess I'm not being very clear. I thought that because of ADIPA, they were not going under 212C at that point. Well, they went the next step further, and they said in particular, they noted that this additional element was there that he had been convicted of an aggravated felony. But the first line is that they considered all of the arguments that were made. There were a series of ten separate things that were listed in the notice to appeal. Can we ñ maybe I just don't understand this. If 212C isn't available, then what's the provision under which they could decline to order him removed? Well, what they were saying is that we find that there's nothing that you've argued that would give you relief. In particular, looking at your aggravated felony, which was the crime of violence, you are not eligible for relief. So what you're telling me, his only option was 212C, and because of his aggravated felony, he couldn't do that at that time? Well, Your Honor, what the Board of Immigration Appeals went is the next step. They said, look, you've got all of these arguments that you're making, and we find they're without merit based on the facts that you've presented to us. Then they went to a particular element and said, this is one of the reasons why we're denying it. We're denying it because you did not ñ you do not qualify for any relief as a result of your aggravated felony. So what they had in opposition ñ But you want us to assume that even though he had an aggravated felony and at that time was not eligible for 212C relief because of the DEPA, that they nonetheless were considering him under that criterion? They had ñ I just have a hard time making that leap. Well, they had all of this information before them because the Petitioner put it before them. Do I ñ do we have the BIA's ruling in our excerpts here? Yes, you do. Where is it? BIA's decision. You mean the November 499? Yes. It's at 113. Okay. Let's see what you're relying on here. That'll help me. Thank you. Maybe that's the way to do this. Yeah. So at 113, the Court goes through this analysis and says ñ They say the Respondent makes numerous arguments on appeal, but they don't identify what the arguments are. Yes. And those are all the arguments that are contained within his notice. And one was 212C? Well, he didn't argue specifically 212C, but he put all the factors for 212C before the Court. But at the time the BIA is doing this, it thinks that 212C relief is not available, correct? Your Honor, it's ñ It's not available categorically. They do go on and say, yes, it's not available categorically. Yeah. But they do say, first, we find all of your arguments are without merit. Yeah. And then we go specifically, we don't think ñ But he didn't argue 212C. It said ñ It said factors. He put forth the factors that support ñ But he never said, I want something that comes out of 212C. He never said that. He never said, I want ñ Isn't it hard to say that when they say numerous arguments that one of the arguments was a 212C argument? He didn't make it. He put the factors there. But he never made the argument. Well, the argument is being made by a result of putting the factors before the Court. I think it might be useful for me, and I think it sounds like my other colleagues, if you would address whether he has a plausible ñ whether he had a plausible claim for 212C relief. And that gets back to ñ Now. Now. Now for them. For 1995. That's correct. And, really, you look at, from 1995, what was actually plausible. Now, the district court had an opportunity to review all the information that was before it. It had an opportunity to review the deportation proceedings. Attached to the United States motions were the documents that we've referenced so far, the notice to the BIA, the BIA's decision as well. In addition to that, the defense submitted two declarations in support of their claim for plausible grounds for relief. Now, the district court went through a very lengthy analysis, and it's indicated in the record itself that this defendant did not have a plausible ground for relief. What is the standard of review that we apply to the district court's decision that there was not a plausible ground ñ plausible case? Well, Your Honor, I would say that it's ñ it's a clear error analysis because ñ You would say based on what authority? I think there's probably a rule here. Well, the ñ it's unclear. I would point to the Ebaldo case as far as the analysis, where you would get the analysis as to what the standard would be. But it's not ñ it's not specifically clear. But that's not actually the standard by which we review. Is it de novo? Is it a view of discretion? I mean, what are we talking about? Well, I think the court could go through a de novo review. But the district court already made findings, and those findings were based on the information that was available to it. Well, the district court didn't make findings as to fact. I mean, the facts are really undisputed. I mean, we have these facts. The district court made the findings as to what do these facts mean. And whether or not there was a plausible grounds for relief. That's correct. That is to say, do these facts, which I don't think there's any serious dispute as to what the facts are. Correct. Do these amount to a plausible case? Yeah. Correct. And the district court ñ So we return to the question, do we review that district court finding de novo, clear error, abuse of discretion? Well, I would say that the court could review it de novo. We would argue that it would be a higher standard, because the district court did make an analysis. And in particular, looked at the declarations that were attached and appeared to make a credibility finding as to the declarations themselves. It looks to me like a mixed case of fact and law, in which case we review it de novo. If you don't have any authority to the contrary. No, Your Honor. Okay. And in the end, the court did have the opportunity to review all this information. Going through, the court looked at whether or not the defendant had a prior work history. And, for example, his work history is detailed in the precedence report, as indicated in the declaration by the brother. All shows that it's a spotty work history at best. And it goes from when he's the age of 22 to the age of 30. And then he's in and out of custody at that point, not being regularly employed. He has no military history. The evidence of hardship to the family is not clear as to what hardship they actually suffered. We have the statements by the daughters as to what actually occurred. But even the daughter's statement as to what status the father has is unclear, because the daughter says that he was deported in 1995. And we all know that that's not what happened in 1995. He was in custody as a result of the domestic violence that occurred. And, in fact, he was finally removed from the country later. Could you tell me what you think we should do with sentencing? Well, Your Honor, for the sentencing issue, we would ask that the court focus on a limited remand in this case. The court, there was a challenge made under Apprendi. And that Apprendi challenge, it turned out to be very appropriate, given the decision in Booker. What we'd ask is that there actually be a limited remand for determination as to whether or not the district court would impose an alternative sentence. And if, in fact, there would be no alternative sentence, then the court affirm the decision. I may have my cases mixed up. I thought this was the case where the district court said if there wasn't a guideline situation, she would impose 8 years, not 200 months. Well, it's 100 months versus 96 months. Oh, it's 100 months, not 200 months. Yes. And in making that determination as to what the district court would do, if the district court says, yes, I'm going to do something different, then the district court can go ahead and do so. But the idea of opening up the case for a complete resentencing doesn't seem appropriate, given that the court has already made its indications as to what it might do, and we should get a decision as to what the district court, in fact, would do. So any remand in this case should be limited to that determination as to whether the district court would, in fact, do something different now that it has the opportunity to do so. Okay. Thank you. Thank you. One minute. Thank you. Your Honors, it does appear from the Ubaldo-Figueroa case that de novo review is appropriate of the factors. And I believe that a full remand as to the sentencing is warranted just due to the fact that the objections were made and preserved at the district court level as to the sentencing. And she did give a low-end sentence. It was 100 to 125 months. It was the range the government was recommending, 125. The district court gave him a 100-month sentence, but did not depart any further. So I think that a full remand just would be warranted in this case, as it is different from Ameline because of the preservation of the objections were made at the district court level. Are there any further questions from the Court? Thank you. Thank you very much for your helpful argument. Thank both sides for their argument in this case. United States versus Hernandez-Sanchez is now submitted for decision. The next case on the argument calendar is United States versus Strathman.
judges: Trott, W Fletcher, Restani (Cit), J